## IN THE UNITED STATES DISTRCIT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CANDY EICKENROTH and
DAMIAN EICKENROTH, individually,
CANDY EICKENROTH, in a
representative capacity on behalf of
similarly situated persons, and
DAMIAN EICKENROTH, in a
representative capacity on behalf of
similarly situated persons,

**Case No.  20-cv-11647-GCS-EAS**

**Judge George Carman Steeh**

**Magistrate Judge Elizabeth A. Stafford**

Plaintiffs,

v.

ROOSEN, VARCHETTI & OLIVER, PLLC,

Defendant.                                    **JURY DEMANDED**

## AMENDED COMPLAINT – CLASS ACTION

## INTRODUCTION

1.      After Governor Whitmer's March 23, 2020 "Stay Home, Stay Safe" Executive Order, Executive Order No. 2020-21 (COVID-19), Defendant Roosen, Varchetti & Oliver, PLLC, caused, and on information and belief directed, to have Plaintiff Candy Eickenroth personally served with a state court summons, a complaint and another documents, a copy of which are attached as (Exhibit A),  and Damian Eickenroth personally served with a state court summons, a complaint and another documents, a copy of which are attached as (Exhibit B).

2.     Plaintiffs, individually and in a representative capacity on behalf of similarly situated persons, allege that the in-person service by a process server was not only an act prohibited under the "Stay Home, Stay Safe" Executive Order, which in part directed all non-critical businesses to temporarily close, notably requiring "[i]n-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume", but that it was a willful violation of that Executive Order which is a misdemeanor, and that same prohibited conduct also violated the Fair Debt Collection Practices Act.

3.     Plaintiffs, individually and in a representative capacity on behalf of similarly situated persons, allege that the summons stating that a responsive pleading to the state court complaint must be filed within 21-days of the in person service, 28-days if served by mail, was false and posed the risk of depriving them and the class members of additional time, being able to exercise their right of delay in responding to the state court complaint provided under Michigan Supreme Court Administrate Order No. 2020-3 and Executive Order No. 2020-58 (COVID-19), thereby potentially causing a case to be expedited.

4.     The legal issues regarding whether in-person service of a state court summons and complaint while the "Stay Home, Stay Safe" Executive Order was in place and whether the state court summons indicating that the state court defendant has 21 days to respond to the state court complaint after personal service, 28 days if

served by mail, while the time in which a defendant needed to respond was tolled, are substantially the same issues advanced in the matter *Van Vleck v. Leikin, Ingber & Winters, P.C.,* 20-cv-11625-SDD-EAS (E.D. Mich. June 22, 2020), and as such, the matters are sufficiently related to be consolidated into one case. *See e.g. In re Cognate Cases,* 2014 U.S. Dist. LEXIS 201812 (W.D. Mich. June 5, 2014) ("These are three of sixteen cognate cases arising under the federal Fair Debt Collection Practices Act. Each case is a putative class action based on the core theory" involving the defendants conduct).

## JURISDICTION AND VENUE

5.    This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. § 1692k (FDCPA).

6.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the mirror MRCPA claims as the conduct complained of arises out of a common nucleus of operative facts.

7.    Venue and personal jurisdiction over Defendant Roosen, Varchetti & Oliver, PLLC in this District is proper because Defendant operates its business from Clinton Township, Michigan, which is located in Macomb County, Michigan.

## PARTIES

8.    Plaintiff Candy Eickenroth is a natural person who resides in Montcalm County, Michigan.

9.     Plaintiff Damian Eickenroth is a natural person who resides in Ionia County, Michigan.

10.     Defendant Roosen, Varchetti & Oliver, PLLC is a domestic professional limited liability company operating as a law firm and is located at 39541 Garfield Road, Clinton Township, Michigan 48038. Its registered agent is Paul E. Varchetti and his address is 39541 Garfield Road, Clinton Township, Michigan 48038.

11.     Defendant Roosen, Varchetti & Oliver, PLLC is engaged in the collection of debts in volume.

12.     Defendant Roosen, Varchetti & Oliver, PLLC is a "debt collector" whom engages in the collection of "debt" as those terms are defined under the FDCPA.

13.     Defendant is a "regulated person" subject to the Michigan Regulation of Collection Practices Act. Mich. Comp. Laws § 445.251(g); *see Carpenter v. Monroe Fin. Recovery Grp., LLC,* 119 F. Supp. 3d 623, 630 (E.D. Mich. 2015); *see also Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 966-67 (E.D. Mich. 2012).

## FACTS

14.     In a state court complaint dated March 11, 2020, Defendant filed suit on behalf of its client in the State of Michigan, 64B District Court, the complaint alleged in part, "[a]s a result of Defendant's default Plaintiff claims breach of

contract, open account, account stated, and or/unjust enrichment." (Exhibits A & B).

15.     On March 17, 2020, the Clerk of the Court issues a Summons in regard to each Plaintiff. (Exhibits A & B).

16.     On information and belief Defendant contracted for, and on information and belief directed, Plaintiffs to be personally served with the summons and complaint in the state court matter.

17.     On March 18, 2020, the Detroit Free Press published an article "First Mich. death due to coronavirus is Southgate man in his 50s", "[t]he man had other underlying health conditions", "'[w]e're trying to heed the warnings on proper social distancing and the like. That's how we're going to make this work'" and "COVID-19 is in our community. It's with us." *Available at* https://www.freep.com/story/news/local/michigan/wayne/2020/03/18/coronavirus-deaths-michigan/5054788002/ (accessed June 17, 2020).

18.     "On March 23, 2020, Governor Whitmer issued what has become known as the 'Stay-at-Home Order.' The Stay-at-Home Order, subject to very limited exceptions, required 'all individuals currently living within the State of Michigan ... to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household [were also] prohibited.' The Stay-at-

Home Order further prohibited all persons and entities from 'operat[ing] a business or conduct[ing] operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations.' It also required all persons to remain at least six feet apart." *SawariMedia LLC v. Whitmer*, No. 20-cv-11246, 2020 U.S. Dist. LEXIS 102237 *9 - 10 (E.D. Mich. June 11, 2020).

19.     On March 23, 2020 the Michigan Supreme Court Administrate Order No. 2020-3, provided in part:

> This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in a civil and probate matters during the state of emergency declared by the Governor related to COVID-19.

> Michigan Supreme Court Administrate Order No. 2020-3.

20.     Governor Witmer's Executive Order 2020-21 (COVID-19), Temporary requirement to suspend activities that are not necessary to sustain or protect life, effective March 24, 2020 at 12:01 am, and continues through April 13, 2020 at 11:59 pm states in part, "[t]his order must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life" and "[c]onsistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor."

21.     April 9, 2020 Executive Order 2020-42 (COVID-19) which took effect April 9, 2020 at 11:59 pm and continued through April 30, 2020 at 11:59 pm stated

in part, "[t]he novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death".

22.    The April 9, 2020 Executive Order 2020-42 (COVID-19) does not carve out the job of a process server of a civil summons from the mandatory stay at home requirements in paragraph 7, nor is the job related to a "critical infrastructure" or to "sustain or protect life", and the Order further states, "all in-person government activities at whatever level (state, county, or local) that are not necessary to sustain or protect life, or to support those businesses and operations that are necessary to sustain or protect life, are suspended" and "and "[c]onsistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor."

23.    On April 20, 2020, WoodTV8 published the article on its webpage, "Whitmer says fight continues as COVID-19 cases, deaths start to decline", in which the article stated in part, "In West Michigan, two more people died in Ottawa County, bringing the total there to seven. 119 cases have been confirmed there. One more person died in Muskegon County, also a total of seven. Muskegon County has 149 confirmed cases. Kent County now has 550 confirmed cases and 24 deaths", "Michigan has confirmed 32,000 cases of coronavirus; 576 more than the day previous. That's the lowest one-day increase in confirmed cases since March 26", and "State officials say strict social distancing measures aimed at slowing the spread of the virus are working, with the number of new cases and deaths daily starting to

fall." *Available at* [https://www.woodtv.com/health/coronavirus/april-20-2020-michigan-coronavirus-cases/](https://www.woodtv.com/health/coronavirus/april-20-2020-michigan-coronavirus-cases/) (accessed June 17, 2020).

24.    On April 22, 2020 at 8:45 pm. Governor Whitmer signed Executive Order 2020-58 (COVID-19), which was effective immediately, and which ordered in part:

> Consistent with the Michigan Supreme Court Administrative Order No. 2020-3, all deadlines applicable to the commencement and all civil and probate actions and proceedings, including but not limited to any deadline for the filing of an initial pleading and any statutory notice provision other prerequisite related to the deadline for filing of such a pleading, are suspended as of March 10, 2020 and shall be tolled until the end of the declared states of disaster and emergency.

25.    On April 29, 2020, The Michigan Court of Claims in refusing to halt Governor Whitmer's "Stay Home, Stay Safe" Executive Order stated, in part, that the Executive Order was "consistent with the law", that "the challenged executive orders were issued to address the public health crisis occasioned by the world-wide spread of the novel coronavirus, which hit our great state in early March", that, "our fellow residents – have an interest to remain unharmed by a highly communicable and deadly virus, and since the state entered the Union in 1837, it has had the broad power to act for the public health of the entire state when faced with a public crisis", and "it was common knowledge that the virus had already rapidly spread throughout the state of Washington, was prevalent in several other states, and was devastating parts of Italy, China, and other countries. Indeed, the speed at which the virus spread

was well known at the time the stay-at-home provision was implemented." *Martinko v. Whitmer et. al.*, Case No. 20-00062-MM, Opinion and Order Regarding Plaintiffs' April 23, 2020 Motion for a Preliminary Injunction (Mich. Ct. of Claims, Apr. 29, 2020).

26.     The Centers for Disease Control and Prevention published an online report "Evidence Supporting Transmission of Severe Acute Respiratory Syndrome CoronaVirus 2 [COVID-19] While Presymptomatic or Asymptomatic" in which it was stated in part, "transmission while asymptomatic reinforces the value of community interventions to slow the transmission of COVID-19. Knowing that asymptomatic transmission was a possibility, CDC recommended key interventions including physical distancing, use of cloth face coverings in public, and universal masking in healthcare facilities to prevent SARS-CoV-2 transmission by asymptomatic and symptomatic persons with SARS-CoV-2 infection." *Available at* *https://wwwnc.cdc.gov/eid/article/26/7/20-1595_article* (internal footnotes omitted) (Accessed June 17, 2020).

27.     Governor Whitmer's Executive Order 2020-68 (COVID-19) executed on April 30, 2020, states in part:

> These statewide measures have been effective, but the need for them—like the unprecedented crisis posed by this global pandemic—is far from over. Though its pace of growth has showed signs of slowing, the virus remains aggressive and persistent: to date, there have been 41,379 confirmed cases of COVID-19 in Michigan, and 3,789 deaths from the disease—fourfold and tenfold increases, respectively, since the start of this month. And there are still

countless more who are infected but have not yet been tested. There remains no treatment for the virus; it remains exceptionally easy to transmit, passing from asymptomatic individuals and surviving on surfaces for days; and we still lack adequate means to fully test for it and trace its spread. COVID-19 remains present and pervasive in Michigan, and it stands ready to quickly undo our recent progress in slowing its spread.

28. Governor Whitmer's Executive Order 2020-96 (COVID-19) effective May 21, 2020, 9:49 am until May 28, 2020, provides in part: "This order must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life"; "All individuals who leave their home or place of residence must adhere to social distancing measures recommended by the Centers for Disease Control and Prevention ("CDC"), including remaining at least six feet from people from outside the individual's household to the extent feasible under the circumstances"; "No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life, to conduct minimum basic operations, or to perform a resumed activity within the meaning of this order"; "All businesses and operations whose workers perform in-person work must, at a minimum, provide non-medical grade face coverings to their workers"; and "Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor."

29. Serving in person a debt collection lawsuit is not permitted under Governor Whitmer's Executive Order 2020-96 (COVID-19).

30.     On or around May 23, 2020, an unknown man came to Plaintiff Candy Eickenroth's place of residence.

31.     The unknown man was not wearing a mask, not wearing gloves, and the door was answered by Plaintiff Candy Eickenroth's elderly mother.

32.     Plaintiff Candy Eickenroth's elderly mother is at high risk to serious infection or death if she contracts COVID-19 as her preexisting health issues includes diabetes, asthma, and high blood pressure.

33.     Plaintiff Candy Eickenroth's elderly mother informed the unknown man that Plaintiff Candy Eickenroth's would be back in about 30 minutes.

34.     Plaintiff Candy Eickenroth returned home, with her fiancé's children who each have a rare blood disorder.

35.     Plaintiff Candy Eickenroth was then approached by the unknown man from the rear, and he personally served with the state court summons, complaint and other documents, a true and correct copy of which, are photographed, are attached hereto as (Exhibit A), while not wearing a mask and not wearing gloves.

36.     Plaintiff Candy Eickenroth has a weak immune system due to preexisting health conditions.

37.     Prior to being served in person on or around May 23, 2020, Plaintiff Candy Eickenroth was experiencing issues with her health, was tested for COVID-19, but tested negative for COVID-19.

38.     Plaintiff Candy Eickenroth after being served on or around May 23, 2020, became terrified, experienced great distress and worry, of the possibility that the unknown, unmasked, and ungloved man who served her the state court summons, complaint and other documents could potentially infect her, her fiancé's children and her elderly mother with COVID-19.

39.     Plaintiff Candy Eickenroth after being served in person on or around May 23, 2020, has taken multiple COVID-19 tests, and thankfully she is negative, which due to symptoms not manifesting themselves after two weeks of time passed, she became more confident that she was not infected.

40.     On or around May 23, 2020, Plaintiff Damian Eickenroth was personally served with the state court summons, complaint and other documents, a true and correct copy, of which are photographed, are attached hereto as (Exhibit B).

41.     Plaintiff Damian Eickenroth was served at his residence in person by an unknown man who wore a mask but did not wear gloves, the same man who a day earlier approached his girlfriend, who has a preexisting respiratory condition.

42.     After being served in person Plaintiff Damian Eickenroth became a little anxious and a little nervous about being potentially exposed to COVID-19.

43.     The summons served upon each Plaintiff, in part states:

> **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).

(Exhibits A & B)(emphasis original).

44.     The summons, in part states, "[i]f you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint." (Exhibits A & B).

45.     After being served in person, Plaintiff Damian Eickenroth skimmed the papers, believed he had 21 days in which to answer the state court complaint, as that is what it says on the summons.

46.     Plaintiff Candy Eickenroth after being personally served shortly thereafter contacted Plaintiff Damian Eickenroth about the state court lawsuit, and Plaintiff Damian Eickenroth entered a Google search for an attorney near me and found and later retained attorney Mr. Golden, who is now expected to appear in the state court collection suit against Plaintiff Candy Eickenroth and Plaintiff Damian Eickenroth.

47.     On information and belief many of Defendant's competitors were not having complaints served upon debtors during the time period Governor Whitmer's "Stay Home, Stay Safe" Executive Order, and as extended, were in place.

48.     Defendant's conduct, on information and belief, was done with the purpose to deprive Plaintiffs and the putative class members of their right of delay, in order to prompt a response from the recipient in regard to the debt.

49.     Under the current applicable Orders, the 21 or 28-day clock for when a defendant must answer or otherwise plead in response to a complaint filed in State of Michigan Court does not start to run until June 20, 2020.  Administrative Order No. 2020-18 (June 12, 2020).

50.     On June 12, 2020, at 4:42 pm, Governor Whitmer made effective Executive Order 2020-122 (COVID-19), which provided in part that, "the temporary extension of deadlines for statutes of limitations provided by Executive Order 2020-58 will no longer be necessary as soon as the Michigan Supreme Court provides for the resumption of computation of days as normal, beginning June 20, 2020."

51.     Governor Whitmer's Executive Order 2020-122 (COVID-19) states in part:

> The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. Older adults and those with chronic health conditions are at particular risk, and there is an increased risk of rapid spread of COVID-19 among persons in close proximity to one another. There is currently no approved vaccine or antiviral treatment for this disease.

## COUNT I
## INDIVIDUAL CLAIM

52.     Plaintiffs incorporates paragraphs 1-51 herein.

53.     Plaintiffs individually brings Count I against Defendant.

54.    Defendant is liable for the acts and omissions of its agents, persons personally served Plaintiffs with the state court summons and complaint, Exhibits A & B.

55.    The personal service of a state court summons and complaint in a debt collection matter is not an act necessary to sustain or protect life or to conduct minimum basic operations under any of Governor Whitmer's COVID-19 related Executive Orders.

56.    Defendant, at the time Plaintiffs were personally served with the state court summons and complaint, was under a legal duty to ensure that service of the state court complaint and summons upon Plaintiff was not done in person.

57.    Defendant violated that legal duty.

58.    The personal service of the state court summons and complaint on Plaintiffs was intentional.

59.    The violation of the "Stay Home, Stay Safe" Executive Order by personally serving Plaintiffs with the state court summons and complaint was willful conduct.

60.    Personally serving Plaintiffs with the state court summons and complaint, at the time it was served, was akin to an abuse of process.

61.    Personally serving Plaintiffs with the state court summons and complaint, at the time it was served, was akin to a common law battery, because

such in-person service was prohibited under the "Stay Home, Stay Safe" Executive Order and was coercive, being done under the perceived color of the law.

62.     The "Stay Home, Stay Safe" Executive Order was a prophylactic emergency Order to combat the spread of the COVID-19 pandemic within the State of Michigan as Governor Whitmer determined that if left unchecked, COVID-19 was an certain impending biological threat to each and every resident in the State of Michigan that would cause injury.

63.     Personally serving Plaintiffs with the state court summons and complaint in light of the purpose of the "Stay Home, Stay Safe" Executive Order was extreme and outrageous conduct.

64.     There is no justifiable reason for either Plaintiff to have been personally served with the state court summons and complaint at the time they was served with the state court summons and complaint.

65.     15 U.S.C. §§ 1692d, d(1) provide:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

15 U.S.C. §§ 1692d, d(1).

66.     Defendant violated 15 U.S.C. §§ 1692d, d(1).

67. 15 U.S.C. §§ 1692c(a), c(a)(1) provide:

(a) Communication with the consumer generally Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
(1) at any . . . place known or which should be known to be inconvenient to the consumer. . . .

68. Defendant violated 15 U.S.C. § 1692c(a)(1).

WHEREFORE, Plaintiff requests this Honorable Court to enter judgment in his favor on Count I and to award them actual and statutory damages along with reasonable attorney's fees and costs permissible under the FDCPA.

## COUNT II
## CLASS CLAIM

69. Plaintiffs incorporates paragraphs 1-51 herein.

70. Plaintiff Damian Eickenroth brings Count II against Defendant in a representative capacity only on behalf of similarly situated individuals, if a named class representative is necessary.

71. Defendant is liable for the acts and omissions of its agents, persons whom personally served the putative class members with a state court summons and complaint.

72. The personal service of a state court summons and complaint in a debt collection matter is not an act necessary to sustain or protect life or to conduct

minimum basic operations under any of Governor Whitmer's COVID-19 related Executive Orders.

73. Defendant, at the time the putative class members were personally served with the state court summons and complaint, was under a legal duty to ensure that service of the state court complaint and summons upon them was not done in person.

74. Defendant violated that legal duty.

75. The personal service of the state court summons and complaint on putative class members was intentional.

76. The violation of the "Stay Home, Stay Safe" Executive Order by personally serving the putative class members with a state court summons and complaint was willful conduct.

77. Personally serving putative class members with the state court summons and complaint, at the time it was served, was akin to an abuse of process.

78. Personally serving putative class members with the state court summons and complaint, at the time it was served, was akin to a common law battery, because such in-person service was prohibited under the "Stay Home, Stay Safe" Executive Order and was coercive, being done under the perceived color of the law.

79.    The "Stay Home, Stay Safe" Executive Order was a prophylactic emergency Order to combat the spread of the COVID-19 pandemic within the State of Michigan as Governor Whitmer determined that if left unchecked, COVID-19 was an certain impending biological threat to each and every resident in the State of Michigan that would cause injury.

80.    Personally serving putative class members with the state court summons and complaint in light of the purpose of the "Stay Home, Stay Safe" Executive Order was extreme and outrageous conduct.

81.    There is no justifiable reason for putative class members to have been personally served with the state court summons and complaint at the time they were served with a state court summons and complaint

82.    15 U.S.C. §§ 1692d, d(1) provide:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

15 U.S.C. §§ 1692d, d(1).

83.    Defendant violated 15 U.S.C. §§ 1692d, d(1).

84.    15 U.S.C. §§ 1692c(a), c(a)(1) provide:

> (a) Communication with the consumer generally Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
> (1) at any . . . place known or which should be known to be inconvenient to the consumer. . . .

85.    Defendant violated 15 U.S.C. § 1692c(a)(1).

86.    The proposed class consists of: (1) All persons with a Michigan address; (2) who after March 23, 2020, and until and including June 12, 2020, were served in person with a state court lawsuit; (3) where Roosen, Varchetti & Oliver, PLLC, was the law firm representing the named plaintiff in the lawsuit filed against the person.

87.    On information and belief given that debt collection law firms such as Roosen, Varchetti & Oliver, PLLC, conduct a volume business, so voluminous that there are more than 40 persons that fall in the proposed class definition above.

88.    There are questions of law and fact common to each class that predominate over any questions affecting only individual class members, whether in person service during Governor Whitmer's March 23, 2020 "Stay Home, Stay Safe" Executive Order, as extended, violates the FDCPA and mirror MRCPA.

89.    Plaintiff Damian Eickenroth, if necessary to represent a class, will fairly and adequately protect the interest of the proposed class in Count II, as his

claim asserted in Count I is common and typical to the claims of the putative class members.

90.     Plaintiff has retained Curtis C. Warner, who is counsel experienced in handling class actions brought under the Fair Debt Collection Practices Act and other consumer protection statutes.

91.     A class action is an appropriate method for the fair and efficient adjudication of this controversy.

WHEREFORE, Plaintiff Damian Eickenroth requests this Honorable Court to appoint him as the class representative, if necessary, appoint Mr. Warner as counsel for the class, enter judgment in favor of persons similarly situated on Count II and to award them statutory damages along with reasonable attorney's fees and costs permissible under the FDCPA, and statutory damages in the amount of $50, trebled if a finding of willfulness in made, along with reasonable attorney's fees and costs as permissible under the MRCPA, and award Plaintiff a reasonable monetary incentive award as serving as the proposed class representative, if needed.

## COUNT III
## INDIVIDUAL CLAIM

92.     Plaintiffs incorporates paragraphs 1- 51 herein

93.     Plaintiffs brings Count III individually against Defendant.

94.     Defendant concealed the fact from Plaintiffs that under the March 23, 2020 Michigan Supreme Court Administrate Order No. 2020-3, they did not need to

file a responsive pleading to the state court complaint within 21-days after being personally served with the summons and complaint.

95.     Nothing prohibited Defendant from crossing out the erroneous 21 DAYS language on the summons and informing each Plaintiff of their rights under the March 23, 2020 Michigan Supreme Court Administrative Order No. 2020-3.

96.     Nothing prohibited Defendant from later informing each Plaintiff via mail of any subsequent Orders that pertained to a date in which the clock to answer or otherwise plead in response to the complaint would start.

97.     An unsophisticated consumer who is served with summons, indicating that they have 21-days if served in person, or 28-days if served by mail, well might think that they must answer or otherwise plead within 21-days if served in person or 28-days if served by mail or otherwise a judgment may be entered against them for all of the relief requested in the complaint.

98.     Defendant's false statement is not trivial, since it could suggest to an unsophisticated consumer that any right they might have to challenge the demand for payment would be extinguished and a judgment entered against them if they did not answer or otherwise plead within the 21 or 28-day time period dictated by how the summons and complaint were served.

99.     Defendant's false statement deprived each Plaintiff of additional time, being able to exercise his right of delay provided under the "Stay Home, Stay Safe"

Executive Order from responding to the state court complaint and having the potential of having a judgment entered against them and being garnished; answering the state court complaint within 21-days as stated on the summons has expedited the resolution of the state court litigation.

100. Indeed, Plaintiffs acted upon the summons and promptly obtained legal counsel.

101. Each Plaintiff has suffered an informational injury, which is substantive in nature.

102. 15 U.S.C. §§ 1692e, e(2)(A) provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of—
> (A) the . . . legal status of any debt . . .

103. Defendant violated §§ 1692e, e(2)(A).

104. M.C.L. §§ 445.252, 445.252(f)(i), 445.252(f)(ii) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * (f) Misrepresenting in a communication with a debtor 1 or more of the following: (i) The legal status of a legal action being taken . . .; (2) The legal rights of the . . . debtor."

105. Defendant violated M.C.L. §§ 445.252(f)(i), 445.252(f)(ii).

106.    M.C.L. §§ 445.252, 445.252(e) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * Making an . . . untrue . . . statement . . . in a communication to collect a debt[.]"

107.    Defendant violated M.C.L. § 445.252(e).

WHEREFORE, Plaintiffs requests this Honorable Court to enter judgment in their favor on Count III and to award them statutory damages along with reasonable attorney's fees and costs permissible under the FDCPA, and statutory damages in the amount of $50, trebled if a finding of willfulness in made, along with reasonable attorney's fees and costs as permissible under the MRCPA.

## COUNT IV
## CLASS CLAIM

108.    Plaintiffs incorporates paragraphs 1-51 herein

109.    Plaintiffs brings Count IV against Defendant in a representative capacity only on behalf of similarly situated individuals, if a named class representative is necessary.

110.    Defendant concealed the fact from the putative class members that under the March 23, 2020 Michigan Supreme Court Administrate Order No. 2020-3, they did not need to file a responsive pleading to the state court complaint within 21-days after being personally served with the summons and complaint.

111.    Nothing prohibited Defendant from crossing out the erroneous 21 DAYS language on the summons and informing each putative class member of their

rights under the March 23, 2020 Michigan Supreme Court Administrative Order No. 2020-3.

112.   Nothing prohibited Defendant from later informing each putative class member via mail of any subsequent Orders that pertained to a date in which the clock to answer or otherwise plead in response to the complaint would start.

113.   An unsophisticated consumer who is served with summons, indicating that they have 21-days if served in person, or 28-days if served by mail, well might think that they must answer or otherwise plead within 21-days if served in person or 28-days if served by mail or otherwise a judgment may be entered against them for all of the relief requested in the complaint.

114.   Defendant's false statement is not trivial, since it could suggest to an unsophisticated consumer that any right they might have to challenge the demand for payment would be extinguished and a judgment entered against them if they did not answer or otherwise plead within the 21 or 28-day time period dictated by how the summons and complaint were served.

115.   Defendant's false statement potentially deprived each putative class member of additional time, being able to exercise his right of delay provided under the "Stay Home, Stay Safe" Executive Order from responding to the state court complaint and having the potential of having a judgment entered against them and

being garnished; answering the state court complaint within 21-days as stated on the summons has expedited the resolution of the state court litigation.

116. Indeed, Plaintiffs acted upon the summons and promptly obtained legal counsel.

117. Each putative class member has suffered an informational injury, which is substantive in nature.

118. 15 U.S.C. §§ 1692e, e(2)(A) provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of—
>   (A) the . . . legal status of any debt . . .

119. Defendant violated 15 U.S.C. §§ 1692e, e(2)(A).

120. M.C.L. §§ 445.252, 445.252(f)(i), 445.252(f)(ii) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * (f) Misrepresenting in a communication with a debtor 1 or more of the following: (i) The legal status of a legal action being taken . . .; (2) The legal rights of the . . . debtor."

121. Defendant violated M.C.L. §§ 445.252(f)(i), 445.252(f)(ii).

122. M.C.L. §§ 445.252, 445.252(e) provide that, "[a] regulated person shall not commit 1 or more of the following acts: * * * Making an . . . untrue . . . statement . . . in a communication to collect a debt[.]"

123. Defendant violated M.C.L. § 445.252(e).

124. The proposed class consists of: (1) All persons with a Michigan address; (2) who after March 23, 2020, and until and including June 19, 2020, were served with a Summons, SCAO Form MC 01; (3) where Roosen, Varchetti & Oliver, PLLC, was the law firm representing the named plaintiff in the lawsuit filed against the person.

125. On information and belief given that debt collection law firms such as Roosen, Varchetti & Oliver, PLLC, conduct a volume business, so voluminous that there are more than 40 persons that fall in the proposed class definition above.

126. There are questions of law and fact common to each class that predominate over any questions affecting only individual class members, whether informing the debtor that they have 21 or 28 days to answer or otherwise respond to the complaint or that a judgment may be entered against them, when the statement was false, violates the FDCPA and mirror MRCPA.

127. Plaintiffs, if they are necessary to represent a class, will fairly and adequately protect the interest of the proposed class in Count III, as their claims

asserted in Count II is common and typical to the claims of the putative class members.

128.   Plaintiff has retained Curtis C. Warner, who is counsel experienced in handling class actions brought under the Fair Debt Collection Practices Act and other consumer protection statutes.

129.   A class action is an appropriate method for the fair and efficient adjudication of this controversy.

WHEREFORE, Plaintiffs request this Honorable Court to appoint Plaintiffs as the class representatives, if necessary, appoint Mr. Warner as counsel for the class, enter judgment in favor of persons similarly situated to Plaintiffs on Count IV and to award them statutory damages along with reasonable attorney's fees and costs permissible under the FDCPA, and statutory damages in the amount of $50, trebled if a finding of willfulness in made, along with reasonable attorney's fees and costs as permissible under the MRCPA, and award Plaintiffs a reasonable monetary incentive award as serving as the proposed class representative, if needed.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner (P59915)         B. Thomas Golden (P70822)
5 E. Market St.                   GOLDEN LAW OFFICES, P.C.
Suite 250                        318 E. Main St., Ste, L, P.O. Box 9
Corning, NY 14830                Lowell, Michigan 49331
(888) 551-8685                   (616) 897-2900

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

| | |
|---|---|
| Curtis C. Warner (P59915) | B. Thomas Golden (P70822) |
| 5 E. Market St. | GOLDEN LAW OFFICES, P.C. |
| Suite 250 | 318 E. Main St., Ste, L, P.O. Box 9 |
| Corning, NY 14830 | Lowell, Michigan 49331 |
| (888) 551-8685 | (616) 897-2900 |
| cwarner@warner.legal | btg@bthomasgolden.com |